UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-15 |
| | ) | |
| JOHNNY RAY LOPEZ | ) | |

**REPORT AND RECOMMENDATION**

Defendant is charged with being a convicted felon in possession of a firearm, a 9mm semi-automatic pistol. The weapon was discovered by Trooper Joshua Orlowski of the Tennessee Highway Patrol during his search of the vehicle in which defendant was a passenger. The defendant has filed a motion to suppress evidence of the handgun, alleging that Trooper Orlowski's search of the vehicle took an impermissibly long time after Trooper Orlowski's stop of the vehicle for a traffic violation, and because Trooper Orlowski's search violated the rule of *Arizona v. Gant*, 129 S.C. 1710, (2009).

Defendant's motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on May 31, 2011, at which Trooper Orlowski was the only witness.

During the late evening hours of October 21, 2010, Trooper Orlowski was on routine patrol in his assigned area in and around Johnson City, Tennessee. As Trooper Orlowski was stopped for a red light at the intersection of Broadway and Main, a Ford Crown Victoria approached from his left and turned right onto Broadway, going past Trooper Orlowski as

it did so. Trooper Orlowski noted that the windows on the Crown Victoria were far darker than state law allowed, and therefore a violation of the "tint" law.[1] That was the third time that day that Trooper Orlowski had seen this car; on the two prior occasions, Trooper Orlowski was not in a position to stop the car. This time, however, he was able to do so. Trooper Orlowski turned his vehicle to follow the Crown Victoria on Broadway, and as he approached from the rear he activated his blue lights.

The entire traffic stop was captured on a video recorder in Trooper Orlowski's car, and the recording (filed as Exhibit 1) has a timing counter. Both cars stopped at 10:36:32 p.m.; in other words, the cars stopped 36-1/2 minutes past 10:00 p.m. For a few moments, Trooper Orlowski sat in his patrol car advising his dispatcher about the traffic stop. Trooper Orlowski then exited his cruiser, arriving at the driver's door of the Crown Victoria at 10:36:56, or say 10:37 p.m. There were four people in the car, including the driver.

At 10:37:29, the driver told Trooper Orlowski that a day or two earlier he had been given a citation by the Johnson City Police Department for a violation of the tint law. However, the driver was not able to produce any evidence that he previously had been given a ticket.

As Trooper Orlowski stood at the driver's window, he immediately detected the strong odor of alcohol, and he observed several empty beer cans in the front passenger compartment, and an open case of beer in the back seat.

---

[1] Tenn. Code Ann. § 55-9-107.

Trooper Orlowski also immediately noticed a "club" wedged between the two front seats, standing upright. Defense counsel persisted in calling this club a "wooden stick," but Trooper Orlowski's description of it confirmed that it was in fact a wooden club. It was approximately 30 inches long, and smaller at one end than the other. It was hand-made and rough-hewn, and appeared to Trooper Orlowski to be a club. The presence of the club, the odor of alcohol, and the presence of the case of beer immediately generated the need to investigate those matters. First, the driver was only 20 years of age, and therefore could not legally possess or consume any alcohol.[2] Second, the club, at least potentially, was a violation of state law.[3]

The window tint violation was real; Trooper Orlowski's stop for that violation was not a pretext for some other subjective reason. The driver's protestation that he previously had been cited for a window tint violation by the Johnson City Police Department did not require Trooper Orlowski to terminate the traffic stop; as already noted, the driver had no evidence of having received a ticket. More importantly, Trooper Orlowski immediately observed circumstances that legitimately raised other concerns: he saw the homemade wooden club, he smelled the strong odor of alcohol, and he observed empty beer cans and an open case of beer.

In addition to the presence of a club and the evidence of alcohol consumption by

---

[2]Tenn. Code Ann. § 1-3-113.

[3]Tenn. Code Ann. § 39-17-1301(2) and § 39-17-1307(a)(1).

someone in the vehicle, the various occupants gave conflicting stories to Trooper Orlowski regarding their itinerary, i.e., from whence they came and where they were going. Whether those seemingly conflicting statements regarding their itinerary were actually conflicting after an after-the-fact analysis is beside the point; they were facially inconsistent and served only to further raise Trooper Orlowski's suspicions that something criminal was afoot. In any event, the conflicting versions provided by the occupants of the car regarding their travels that evening is really an inconsequential matter in light of the presence of the club and the beer.

The duration of a traffic stop must be reasonable, and if its length goes beyond that which is necessary to attend to the usual duties surrounding a traffic stop – checking the validity of the driver's license, the car registration, and issuing the citation itself – the stop itself becomes unreasonable under the Fourth Amendment and any evidence obtained as a result is inadmissible. *See, e.g., United States v. Urrieta*, 520 F.3d 569 (6th Cir. 2008). However, if during the course of a traffic stop circumstances become apparent to the officer that reasonably indicate a likelihood of other criminal activity, the stop metamorphoses into an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968). *See, also, United States v. Bailey*, 302 F.3d 652 (6th Cir. 2002).[4] So long as the officer has a "reasonable suspicion," based on articulable facts, that criminal activity is afoot, a *Terry*-type investigation is appropriate, *Terry, supra*, 392 U.S. at 30; *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

---

[4]*Bailey* originated in this court.

"Reasonable suspicion" is determined in the light of the totality of the circumstances known to the officer at the time of the stop, *United States v. Townsend*, 305 F.3d 537 (6th Cir. 2002). Here, the totality of the circumstances indicated to Trooper Orlowski that one, some, or all of the occupants of this vehicle had committed a criminal offense, and he was justified in further detaining the vehicle and its occupants to investigate his suspicion.

When circumstances justify a *Terry*-stop, the officer is entitled to further detain the occupants of the vehicle for an additional period of time reasonably necessary to investigate the circumstances giving rise to the officer's suspicion. There is no bright-line or arbitrary time limit; what is a reasonable amount of time must be determined on a case-by-case basis. *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

At 10:38 p.m., Trooper Orlowski directed the driver to exit the car, and he questioned the driver for perhaps two minutes regarding his possible use of alcohol, and whether there was any contraband in the car.

At 10:45:44 – approximately 8-1/2 minutes from the time Trooper Orlowski arrived at the driver's window – Trooper Orlowski instructed one of the back-seat passengers to exit the vehicle, and he conducted a pat-down search of that passenger. He discovered a cellophane baggie containing various pills, none of which Trooper Orlowski could identify, but which he suspected were Oxycodone. The passenger told Trooper Orlowski that he had a prescription for these pills, yet he had them in a baggie as opposed to a legitimate prescription pill bottle. As a result of this discovery, Trooper Orlowski's reasonable and articulable suspicion of criminal activity was ratcheted up even further.

At 10:49:20 p.m., slightly less than 12-1/2 minutes after Trooper Orlowski approached the driver, he instructed the other rear-seat passenger, defendant, to get out of the car. As defendant exited the car, and without any prompting or questioning by Trooper Orlowski, defendant provided his name and announced that there was an outstanding warrant for his arrest for a violation of parole. Trooper Orlowski conducted a pat-down search of defendant and, at 10:51:30 p.m., he detected a metal object in defendant's pants pocket which defendant described as his "crack pipe."

At 10:54 p.m, approximately 17 minutes after the commencement of the traffic stop, Trooper Orlowski announced to all four individuals that, as a result of finding the crack pipe, he was going to search the passenger compartment of the car. That search started at 10:57:50, and at 11:06 Trooper Orlowski discovered the firearm under the driver's seat. Within just a few minutes thereafter, defendant told Trooper Orlowski that the gun belonged to him.

This court's repeated references to the chronometer on the video recording is really unnecessary in light of the fact that this traffic stop immediately evolved into a *Terry*-stop, justifying a reasonable extension of the time of the stop to investigate Trooper Orlowski's suspicions of other criminal activity. Certainly, the passage of 30 minutes from the time Trooper Orlowski arrived at the driver's window until his discovery of the firearm was not unreasonable under the circumstances. And it bears repeating that defendant's status as a parole violator, and his possession of a crack pipe, were discovered *within 13 minutes* of the initiation of the stop.

6

*Arizona v. Gant*, 129 S.C. 1710 (2009) is inapplicable to the facts of this case. *Gant* simply held that an officer may search the vehicle of a person arrested for a traffic violation only if there is a valid reason to suspect evidence of the traffic violation will be found in the vehicle, or if there is a basis to search for reasons of safety. Here, Trooper Orlowski searched the vehicle because of the crack pipe found on defendant's person, and he unequivocally told defendant and the other three occupants that he was going to search the car and why he was doing so.[5] After the lawful arrest of an occupant of a vehicle, the passenger compartment of that vehicle, as well as any containers therein, may be searched without a warrant or further showing of probable cause, *New York v. Belton*, 453 U.S. 454 (1981).

The traffic stop was based on probable cause. Immediately upon his arrival at the driver's window, Trooper Orlowski noticed the strong odor of alcohol and the presence of the club, both of which were potential offenses under Tennessee law, warranting further investigation. Within 13 minutes of the commencement of the traffic stop, defendant announced that there was a warrant outstanding for his arrest for a parole violation, and he was found to be in possession of a crack pipe. That admission in turn justified a search of the passenger compartment of the car for contraband, and that search was completed within 30 minutes of the commencement of the traffic stop. That time was more than reasonable

---

[5]The video recording of this traffic stop and the subsequent interaction between Trooper Orlowski and the occupants of this car reveal an extremely competent, professional, and polite law enforcement officer. This recording easily could be used as a training film for police cadets.

7

under all the circumstances.

It is respectfully recommended that defendant's motion to suppress (Doc. 17) be denied.[6]

Respectfully submitted,

                                            s/ Dennis H. Inman
                                        United States Magistrate Judge

---

[6]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).