IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-015 |
| | ) | |
| JOHNNY RAY LOPEZ, JR. | ) | |

**MEMORANDUM AND ORDER**

Trooper Joshua Orlowski's warrantless vehicle search discovered a loaded semi-automatic pistol for which the defendant is now being prosecuted as a felon in possession. The defendant has moved to suppress the evidence seized during the search [doc. 17]. Now before the court is the June 1, 2011 report and recommendation of Chief United States Magistrate Judge Dennis H. Inman [doc. 23], along with the defendant's objection thereto [doc. 26]. Magistrate Judge Inman recommends that the suppression motion be denied.

The court has undertaken a *de novo* review of the report and recommendation, as is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The district court need not provide *de novo* review where objections are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). For the reasons that follow, the defendant's suppression motion will be denied, and his objection to the report and recommendation will be overruled.

I.

*Background*

The magistrate judge conducted an evidentiary hearing on the motion to suppress. Tennessee Highway Patrol ("THP") Trooper Orlowski testified, and the video of the traffic stop was introduced into evidence. A transcript of the hearing has been filed, and the court has reviewed both the transcript and the video in full.

Trooper Orlowski pulled over a Ford Crown Victoria in Johnson City, Tennessee, shortly after 10:30 p.m. on October 21, 2010, due to an apparent window tint violation. There were four men in the vehicle, including the defendant who was sitting on the driver's side of the back seat. Trooper Orlowski testified that upon approaching the car he noticed a strong smell of alcohol. He saw open containers of beer inside the car along with what appeared to be a homemade wooden club in the front seat. In the officer's opinion, the driver acted unusually nervous.

Based on these observations, Trooper Orlowski testified that he

> wanted to investigate further to whether he [the underage driver] had been drinking, and I wanted to investigate further the potential of the weapon as a, as a club, so I pulled out [the] other occupants and began asking them where they were coming from or where they were going. And the stories did not match . . . .

[Hearing transcript, p. 9]. The officer first spoke with the driver and then with the front seat passenger. Next, he spoke with the passenger-side occupant of the back seat, who was visibly intoxicated and had several unidentified (at that point) pills in a plastic baggie on his

2

person.

Lastly, Trooper Orlowski asked the defendant to exit the vehicle. The defendant immediately gave his name and volunteered that he was wanted on a parole violation. Trooper Orlowski promptly gave the defendant a *Miranda* warning and advised that he would be taken into custody. According to the officer's testimony,

> he told me, "My name's Johnny Ray Lopez, and I have a violation of parole out of Washington County." So I knew I was going to place him in the back of my police car. So I, that's when I patted him down and began to search before I put him back there. . . . I told him I was detaining him until I could determine whether there was actually a violation of parole out or not.

[Hearing transcript, p.15]. The trooper's frisk of the defendant revealed a crack pipe.

Trooper Orlowski subsequently explained to the driver and front seat passenger that he would be searching the vehicle due to the discovery of the pills and the pipe. The search uncovered the loaded semi-automatic weapon, which the defendant acknowledged was his.

The traffic stop occurred at approximately 10:36 p.m. The defendant volunteered that he was wanted for a parole violation at 10:49 p.m. The defendant acknowledged ownership of the gun at 11:11 p.m.

II.

*Analysis*

The defendant complains that Trooper Orlowski's actions improperly exceeded the scope of the initial traffic stop. He further argues that the vehicle search was unconstitutional under *Arizona v. Gant*, 129 S. Ct. 1710 (2009). The magistrate judge concluded that the detention and search were permissible, and that *Gant* is of no benefit to the present defendant. The court agrees with those recommendations.

An officer may stop a vehicle if he has probable cause to believe that a civil traffic violation has occurred. *See United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). The defendant does not dispute that the tint violation provided that probable cause.

However, "[o]nce the purpose of a traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Blair*, 524 F.3d at 752 (citations and quotations omitted). In other words, "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Terry v. Ohio*, 392 U.S. 1, 18 (1968). To detain a motorist (or, in this case, a passenger) longer than is reasonably necessary to resolve the purpose of the traffic stop, the officer must have reasonable suspicion of more extensive criminal conduct. *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). Without reasonable suspicion, "all the officer's actions must be reasonably related in scope to circumstances justifying the

4

original inference." *Id.* (citation and quotation omitted).

Whether an officer had a reasonable, articulable suspicion must be determined under a totality of the circumstances analysis. *See United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001). "[D]ue weight must be given, not to [an officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27; *accord Smith*, 263 F.3d at 588. Evidence offered in support of reasonable suspicion must be considered under "a common sense approach, as understood by those in the field of law enforcement." *Smith*, 263 F.3d at 588.

As did the magistrate judge, the court concludes that Trooper Orlowski articulated a reasonable basis for suspecting that criminal activity was afoot within the Crown Victoria. The court refers specifically to the open containers of alcohol throughout the vehicle and to the wooden club positioned in the middle of the front seat. Having reviewed the video and hearing transcript, the court agrees with the magistrate judge that Trooper Orlowski's testimony on these points was credible. The officer's detention of the vehicle and its occupants beyond the scope of the initial stop was thus proper under *Terry*.

Various criticisms offered by the defendant do not change the court's opinion. That Trooper Orlowski said something to the effect of "I'm not saying you [the driver] have been drinking" does not mean that the officer was not in fact truly concerned about the alcohol issue. The statement was made early in the investigation. Further, the statement

5

viewed in context was part of the calming demeanor exhibited by Trooper Orlowski throughout the stop. As observed by the magistrate, Trooper Orlowski's balance of professionalism and relaxed tone was absolutely exemplary.

Plaintiff also complains that the officer was not truly concerned about the club because he did not seize it immediately. However, Trooper Orlowski explained that he was initially outnumbered four-to-one and for that reason did not want to draw attention to his awareness of the apparent weapon. He further explained that even after the front seat had been emptied, he did not enter the vehicle to retrieve the club because he did not know whether the back seat occupants were armed. The court finds that testimony both logical and credible. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996) (noting the deference due an officer's view of "the facts through the lens of his police experience and expertise").

As for defendant's criticism that the occupants' stories were not actually in conflict regarding their travel route, Trooper Orlowski testified that he is not originally from Tennessee and that he is not usually assigned to work in the area where the stop took place. To him, at least, the occupants' stories appeared irreconcilable. The court credits that explanation. In any event, as noted by the magistrate, this issue is largely inconsequential in light of the weapon and the beer. Lastly, the court disagrees with defendant's contention that the stop was unduly long. Less than thirteen minutes passed between the initial stop and defendant's admission of a parole violation - an admission that took place after the trooper had first spoken with the other three occupants of the car.

6

Turning now to the confessed parole violation, Trooper Orlowski immediately took the defendant into custody for that reason. The ensuing patdown, which revealed the crack pipe, was therefore constitutional. *See United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004). Once the pipe was found, the defendant was also detained for possession of drug paraphernalia. Despite the defendant's arguments to the contrary, under *Gant* the search of the vehicle was then proper.

At the time of the vehicle search, the defendant was (in part) in custody for a drug violation. The officer had also found as-yet unidentified pills in a baggie on a co-occupant of the Crown Victoria. Trooper Orlowski explained to the driver and front seat passenger that he would be searching the vehicle due to the discovery of the pills and the crack pipe. *Gant* permits that very thing. *See Gant*, 129 S. Ct. at 1723 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or it is reasonable to believe the vehicle contains evidence of the offense of arrest*.") (emphasis added).

III.

*Conclusion*

For the reasons discussed herein, the detention and search at issue were constitutionally permissible at every step. The court accordingly **ADOPTS** the findings of fact and conclusions of law set out in Magistrate Judge Inman's report and recommendation [doc. 23]. The defendant's motion to suppress [doc. 17] is **DENIED**, and his objection [doc.

26] is **OVERRULED**.

       **IT IS SO ORDERED.**

                          ENTER:

                                   s/ Leon Jordan
                              United States District Judge

8

Case 2:11-cr-00015-JRG-HBG   Document 31   Filed 07/13/11   Page 8 of 8   PageID #: 174